Argued 22 December, 1902; decided 26 January, 1903.

## FALCO *v*. KAUPISCH CREAMERY COMPANY.

[70 Pac. 286.]

BANKRUPTCY OF CORPORATION—WHO MAY SUE FOR UNPAID SUBSCRIPTIONS.

Under 30 Stat. U. S. 565, § 70,* which vests in the trustee in bankruptcy all property transferred by the bankrupt in fraud of creditors, as well as all rights of action arising on contract, and authorizes the trustee to avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, the trustee is the only person who can sue to recover unpaid stock subscriptions from the stockholders of an Oregon corporation, for in this state such subscriptions constitute an asset of the corporation, and must be proportionately distributed among the creditors, which can be done only by a trustee.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by Joseph Falco against the Kaupisch Creamery Co. and others. Plaintiff appeals from an order sustaining a demurrer to the complaint.        AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. George W. P. Joseph.*

For respondents there was a brief and an oral argument by *Mr. William T. Muir.*

MR. JUSTICE BEAN delivered the opinion.

This is an appeal from a decree sustaining a demurrer to the complaint in a suit brought by a creditor of an insolvent corporation against the stockholders thereof to recover and to have applied to the debts of the concern alleged unpaid subscriptions to the capital stock. From the complaint it appears that on and prior to January 28, 1899, Julius C. Kaupisch and H. W. Kaupisch were partners, doing business at Portland, under the firm name of Kaupisch Creamery, with property and good will of the value of $5,000, and no more; that it was agreed about that time between them and the defendants T. Rand and M. C. Banfield that they four should cause the defendant corporation to be organized, with a capital stock of $30,000, divided into 1,200 shares, of the par value of $5 each;

*U. S. Comp. Stat. 1901, p. 3451; 1 Fed. Stat. Ann. p. 697, *et seq.* § 70, a (4), (6), e.

that Rand and Banfield should purchase a one half interest in the property, pay therefor to the Kaupisches $5,000, and that immediately after the organization of the corporation the property and good will of the firm and $4,000 of the money to be so paid should be transferred to it, in consideration of which 800 shares of fully paid up capital stock, of the par value of $20,000, should be issued, 400 shares to the Kaupisches and 200 each to Rand and Banfield. In pursuance of this agreement the corporation was organized, the Kaupisches subscribed for 400 and Rand and Banfield for 200 shares each, and immediately thereafter the board of directors adopted resolutions, reciting that, in consideration of the transfer to the corporation of the property of the partnership, at a valuation of $16,000, and $4,000 in money, there should be issued and delivered to the stockholders fully paid up capital stock for the amount subscribed by each, which was done accordingly. On October 5, 1899, the corporation was adjudged a bankrupt by the United States district court, and a trustee appointed, who sold all its property and made a small payment on the indebtedness thereof, and was still in office at the commencement of this suit. The plaintiff complains, and alleges that the transaction set out in the complaint, by which it was attempted to issue to the stockholders paid up stock, was fraudulent and void as to the creditors, and simply amounted to a payment by the several subscribers on their stock of an amount equal to the actual value of the property transferred to the corporation. Assuming that the complaint states a cause of suit, the single question on this appeal is whether it can be maintained by a creditor, or should have been brought by the trustee in bankruptcy.

Under the national bankrupt act, a trustee in bankruptcy is vested by operation of law with all "rights of action arising upon contracts" in favor of the bankrupt, and all "property transferred by him in fraud of his creditors," and "may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided": 30 Stat. U. S. p. 565, § 70. He is, therefore, not only an officer of the court,

but the representative of the creditors of the estate, and as such may sue to set aside and avoid transfers and conveyances made by the bankrupt in fraud of creditors, although such transfers and conveyances may be valid as between the bankrupt and his grantee: Black, Bankr. 236; *Murray* v. *Beale,* 97 Fed. 567 (3 Am. Bankr. R. 284, 289); *In re Woodbury,* 98 Fed. 833 (3 Am. Bankr. R. 457, 464). Now, under our constitution, an unpaid subscription to the capital stock of a corporation is not a personal liability in favor of the creditors, nor is it collateral to the obligation of the corporation, but is a part of the assets thereof, which, in case of its insolvency, the creditors are entitled to have paid in for their benefit. "The constitution of Oregon," says Mr. Chief Justice WAITE, "created no new right in this particular; it simply provided for the preservation of an old one. The liability under this provision is not to the creditors, but for the indebtedness. That is no more than the liability created by the subscription. The subscription is part of the assets of the corporation, at least so far as creditors are concerned. The liability of the stockholder to the creditor is through the corporation, not direct. There is no privity of contract between them, and the creditor has not been given, either by the constitution or the statute, any new remedy for the enforcement of his rights. The stockholder is liable to the extent that the subscription represented by his stock requires him to contribute to the corporate funds, and when sued for the money he owes, it must be in a way to put what he pays, directly or indirectly, into the treasury of the corporation for distribution according to law": *Patterson* v. *Lynde,* 106 U. S. 519 (1 Sup. Ct. 432).

From this doctrine it necessarily follows that unpaid subscriptions to the capital stock of a corporation pass like other assets to the trustee in bankruptcy, and he is the only party that can bring an action or proceeding thereon: *Sanger* v. *Upton,* 91 U. S. 56; *In re Crystal Springs Bottling Co.* 96 Fed. 945; *Lane* v. *Nickerson,* 99 Ill. 284. And it also follows that any fraudulent act of the corporation itself, intended to deprive the creditors of a right to resort to the unpaid subscription, is

of the same nature as fraudulent conveyances of any other property of the bankrupt, and may be avoided at the suit of a trustee: *Sawyer* v. *Hoag,* 84 U. S. (17 Wall.) 610. Where the liability of a stockholder is in the nature of a penalty, or personal to the creditors, and not a part of the assets of the corporation, the action or suit must be maintained by the creditor: *Dutcher* v. *Marine Nat. Bank,* 12 Blatchf. 435 (Fed. Cas. No. 4,203). But where, as under our constitution, it forms a part of the corporate assets, it is only through the instrumentality of the trustee, when the corporation has been adjudged a bankrupt and the estate is in process of settlement in the bankrupt court, that the creditor can reach and subject such assets to the payment of his debt: *Glenny* v. *Langdon,* 98 U. S. 20; *Perry* v. *Carnes,* 86 Mo. 652; *Lane* v. *Nickerson,* 99 Ill. 284; *Blair* v. *Hanna,* 87 Ind. 298. The distinction alluded to is made in *Dutcher* v. *Marine Nat. Bank,* 12 Blatchf. 435 (Fed. Cas. No. 4,203), which was an action by an assignee in bankruptcy against the stockholders of a corporation to enforce a provision of the constitution of the State of New York declaring that such stockholders shall be individually liable for the debts of the corporation to the amount of the stock held by them respectively. It was held that the liability of a stockholder was personal to the creditors, not a part of the assets of the bankrupt corporation, and did not pass to the assignee. The court said: "It is not like unpaid subscriptions to the capital stock, as in *Sawyer* v. *Hoag,* 84 U. S. (17 Wall.) 610, for the liability of the stockholder there was a liability to the corporation, and passed, as such, to the assignee in bankruptcy. It was a fund belonging to the corporation for all purposes; and any act of the corporation itself which fraudulently or inequitably operated to deprive the creditors thereof was properly held void. In that respect, acts of the corporation defeating the just rights of creditors to have that liability enforced for their benefit were of the same nature as fraudulent conveyances of any other property of the bankrupt." The same principle was applied in the case of *In re Crystal Springs Bottling Co.* 96 Fed. 945. That was a suit by a trustee in bankruptcy against

stockholders of an insolvent corporation to recover unpaid subscriptions to the capital stock, and it was contended as a defense that the directors of the corporation had incurred a personal liability to the creditors by assenting to the contracting of debts in excess of two thirds of the capital stock paid in, and by paying dividends when the company was insolvent. But it was held that the statutory liability of the directors was not an asset of the corporation which the trustee could enforce, and was therefore no defense to the suit by him to recover unpaid subscriptions. It follows from these views that the decree of the court below must be affirmed, and it is so ordered.

AFFIRMED.